IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY J. JARMUTH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-04713 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Jarmuth filed a four-count complaint for declaratory judgment and injunctive relief against Defendants City of Chicago and Local Liquor Commissioner Gregory Steadman, asserting equal protection (Count I) and substantive due process (Count II) violations under 42 U.S.C. § 1983, as well as state law claims for a petition for writ of mandamus pursuant to 735 ILCS 5/14-101 (Count III) and indemnification pursuant to 745 ILCS 10/9-102 (Count IV). In short, Plaintiff seeks to prevent liquor licenses from being issued near where he lives.

Defendants move to dismiss Plaintiff's federal claims and urge the Court to decline to exercise jurisdiction over Plaintiff's state law claims. In his response brief, Plaintiff concedes that the complaint does not state a claim for a substantive due process violation—or, as Plaintiff puts it, "does not amount to a deprivation that 'shocks the conscience' in the sense required in a substantive due process claim"—and "withdraws Count II." Pl.'s Resp. at 13. Additionally, for the reasons set forth below, the Court grants Defendants' motion to dismiss [14] with respect to the remaining federal claim – for equal protection (Count I) – and dismisses Plaintiff's state law claims without prejudice.

1

**I.	Background**[1]

Plaintiff is a resident of the City of Chicago and resides within a geographic area that in November 1982 was designated as the 7th precinct of the 42nd ward of the City, which is bounded by Elm Street on the south, State Street on the west, Division Street on the north, and Lake Shore Drive on the east (the "1982 7th Precinct").  On November 2, 1982, the residents of the 1982 7th Precinct voted to prohibit the retail sale of all alcoholic liquor within the 1982 7th Precinct pursuant to Article IX of the Illinois Liquor Control Act ("ILCA").  In his complaint, Plaintiff asserts that Defendants have incorrectly decided, under the Illinois Liquor Control Act, that since at least June 14, 1984, liquor licenses may be issued in the portion of the 1982 7th Precinct bounded by Elm Street on the south, State Street on the West, Division Street on the north, and the alley immediately east of State Street on the east—as Plaintiff refers to it, the "annexed area."  According to Plaintiff, Defendants have taken steps to issue a liquor license for an address within this area and, in turn, have violated Plaintiff's rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution.

In May or June of 1984, the City received a petition to discontinue the prohibition on the retail sale of alcoholic liquors in the "annexed area" pursuant to Section 173.1(b) (now Section 9-9(b)) of the ILCA), which the Court will refer to as the "wet" petition.  The City's Law Department issued a letter to the City Clerk advising that the wet petition appeared to conform to the requirements of the Act.  Because no objections had been filed, the Clerk filed the petition and the prohibition was discontinued in the "annexed area" as of June 14, 1984.

According to the complaint, certain residents of the 1982 7th Precinct became aware of the wet petition in mid-1984 and raised concerns.[2]  According to Plaintiff, the alderman who

---
[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint.  See, *e.g., Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

represented the area from 1971 until 2007 indicated that he considered the area to be "dry" at several public meetings in the late 1990s and early 2000s, and a document entitled "City of Chicago '07-'08 Zoning Map" indicated the area was "dry." No liquor license applications for locations in the 1982 7th Precinct were submitted between 1984 and 2012.

According to the complaint, sometime in 2007 or 2008, M Development, LLC, which owned some structures in the annexed area, proposed to demolish some or all of the existing structures and build a hotel. Following the proposal, a meeting was held, during which at least four citizens of the precinct, including Plaintiff, maintained that the precinct was "dry with no exceptions." Principals of M Development allegedly indicated that they were unaware that the precinct was "dry with no exceptions."

On or about August 15, 2012, an application for a packaged goods liquor license for 1149 N. State Street, which is located within the "annexed area," was submitted to Defendants. Plaintiff contacted the alderman's office and was told that the subject area was "wet." Plaintiff then reviewed the City's zoning map, which, contrary to the '07-'08 map, indicated that the subject area was eligible for liquor license applications. Plaintiff made numerous requests for information from the Defendant regarding the change of the area from "dry" to "wet" status. According to Plaintiff, he was repeatedly told that the "annexed area" was made "wet" by virtue of the petition dated May 5, 1984.

---

[2] Plaintiff alleges that at that time (1984) "the matter was once again brought before the Federal district court" in a case entitled *Philly's, The Original Philly's Cheese Steak, Inc. v. Byrne*, No. 83-1945, *aff'd*, 732 F.2d 87 (7th Cir. 1984), and that someone recalls the trial judge (Judge Kocoras) opining that the entire Precinct remained "dry with no exceptions" because the Precinct had been "unlawfully gerrymandered." However, the district court docket sheet—of which the Court can take judicial notice—reflects no further proceedings in the district court after the entry of judgment on April 19, 1983. See, e.g., *See In re Salem,* 465 F.3d 767, 771 (7th Cir. 2006) (courts may take judicial notice of court dockets and opinions). Although the Court generally is obliged to accept the allegations of a complaint as true, that maxim does not apply where those allegations are contradicted by judicially noticed facts. See *In re Woodmar Realty Co.*, 294 F.2d 785 (7th Cir. 1961). And there simply is no way that Judge Kocoras would have invalidated the Clerk's action without so much as a docket entry reflecting that judicial action.

Plaintiff contacted Commissioner Steadman on December 11, 2012, and informed him of the historical facts surrounding the status of the "annexed area." According to Plaintiff, Steadman informed Plaintiff that he intended to honor the petition's validity and consider the liquor license application. In early March 2013, Plaintiff petitioned the City and Steadman for a hearing regarding the issuance of the liquor license, but Plaintiff's request was not granted. Plaintiff also telephoned various local officials to voice his opinion and provided the City with a "legal memorandum" outlining his position. On June 12, 2013, Steadman allegedly entered into a "Plan of Operations" with Just Grapes, LLC, indicating that a packaged goods liquor license would be issued to Just Grapes, LLC, in the event that it met six conditions listed in the "Plan of Operations."

According to Plaintiff, as of the date of the filing of the complaint, it was unclear if Defendants had issues a package goods liquor license to Just Grapes, LLC.

## II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts]

4

view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

**III. Analysis**

**A. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. The typical equal protection case involves discrimination by race, national origin, or sex; however, the Clause also prohibits the singling out of a person for different treatment for no rational reason. Count I of Plaintiff's complaint alleges a class-of-one equal protection violation. The classic class-of-one claim is illustrated when a public official, "with no conceivable basis for his action other than spite or some other improper motive * * * comes down hard on a hapless private citizen." *Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir. 2005); see also *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013). Defendants contend that Plaintiff's class-of-one equal protection claim is untimely and fails to state a claim.

Briefly, with respect to the timeliness argument, the Seventh Circuit has been very clear in its assessment of limitations arguments at the pleadings stage: "[O]n the subject of the statute of limitations * * * * [w]hat a complaint must plead is enough to show that the claim for relief is plausible. Complaints need not anticipate defenses and attempt to defeat them. The period of limitations is an affirmative defense * * * * We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)." *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012) (internal citations omitted) (reminding judges to "respect the norm that complaints need not anticipate or meet potential affirmative defenses"). At this stage, Plaintiff has not pleaded himself out of court by alleging facts that clearly establish a statute-of-limitations defense for Defendants. See *Xechem, Inc. v.*

*Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."). The City's statute of limitations defense—arguably brought under the wrong part of Federal Rule of Civil Procedure 12 (see *Mitcheff*, 696 F.3d at 637-38)—is premature, and thus the Court moves directly to Defendants' contention that Plaintiff has failed to state a federal equal protection violation.

Although the standard for a class-of-one equal protection claim currently is unsettled in this circuit (see *Del Marcelle v. Brown Cnty. Corp.,* 680 F.3d 887 (7th Cir.) (en banc) (5–5 division resulting in no controlling opinion) (cert. denied, ––– U.S. ––––, 133 S.Ct. 654 (2012))), "the claim at a minimum would require proof that the defendants intentionally treated [Plaintiff] differently from others situated similarly to [him] for no rational reason." *Williamson v. Curran,* 714 F.3d 432, 449 (7th Cir. 2013); see also *Geinosky v. City of Chicago,* 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Oregon Dept. of Ag.,* 553 U.S. 591, 601 (2008); *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). As previously noted, a class-of-one claim differs from the typical equal protection claim in that the plaintiff is not claiming to have been discriminated against because of his membership in an identifiable group; rather, "a plaintiff alleges that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Seventh Circuit has held that class-of-one claims can be based on allegations of the irrational or malicious application of law enforcement powers. See, *e.g., Geinosky*, 675 F.3d at 747; *Hanes v. Zurick,* 578 F.3d 491, 495 (7th Cir. 2009). Courts also have noted that if class-of-

one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits. "One element of a proper class-of-one claim is a wrongful act that necessarily involves treatment departing from some norm or common practice." *McDonald*, 371 F.3d at 1009. But "the purpose of entertaining a 'class of one' equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case." *Id.*

Here, Plaintiff's complaint does not identify anyone who has been treated more favorably than Plaintiff in Defendants' application of the ILCA. Plaintiff, citing *Geinosky*, contends that it would be nearly impossible for him to find a comparator. As pointed out by Plaintiff, the court in *Geinosky* recognized a limited exception to the requirement that a plaintiff allege facts sufficient to show that the plaintiff was similarly situated to any comparators. In *Geinosky*, the plaintiff was not required to identify a comparator because the egregious "pattern and nature" of the alleged conduct, which included "twenty-four bogus parking tickets from officers of the same police unit," over a fourteen-month period made it "so simple" to discern how defendant's conduct toward plaintiff differed from the norm. 675 F.3d at 748; see also *Turner v. City of Chicago*, 2013 WL 4052607, at *4 (N.D. Ill. Aug. 12, 2013).

Although Plaintiff analogizes his circumstances to those in *Geinosky*, the analysis in *Geinosky* is not particularly helpful to Plaintiff's claim. Plaintiff has not identified a pattern of wrongful conduct toward him by Defendants. Rather, his allegations stem from Defendants' behavior in relation to a single liquor license application in his neighborhood. In essence, Defendants followed their interpretation of the ILCA instead of Plaintiff's interpretation of the law and historical records in concluding that the liquor license application was proper, and Plaintiff disagrees with their decision to do so. Even if Defendants refused to give Plaintiff a

hearing, argued with him on the phone, and generally frustrated his efforts to stall issuance of the liquor license, these actions do not indicate that Defendants' conduct toward Plaintiff differed from the norm. Looking at Plaintiff's claim from a slightly different angle, there is nothing in the complaint to suggest that Defendants would not have responded in precisely the same manner if another individual were in Plaintiff's shoes.

Further, even if Plaintiff could identify or allege a comparator, Defendants have a rational basis for relying on the decision of the City Clerk three decades ago to accept the petition which made the subject area "wet." The Liquor Control Act clearly assigns the responsibility for determining validity of a petition to the City Clerk. See 235 ILCS 5/9-4, 9-9(b). Here, the Clerk (perhaps incorrectly) accepted the petition in 1984 and filed it with the Board of Elections. The ILCA, by providing a method for seeking review of such a decision in Illinois' courts (see 235 ILCS 5/9-9), implies that municipal governments and local liquor commissioners should not second-guess a clerk's determinations extra-judicially. Moreover, the ILCA also allows voters to revisit the results of prior classifications at any time after a 47-month interval has passed, which provides yet another path for Plaintiff to obtain relief from what he clearly views to be an improper determination by the Clerk (and the City's Law Department) three decades ago.

In addition, as Defendants note, accepting Plaintiff's position would change the process of reviewing liquor license applications in Illinois. Defendants would have to review historical records each time a liquor license application is received—or at least challenged. Defendants' practice is not to review the Clerk's determination. While Plaintiff may not like the practice, the question presented by that dispute, if any, is one of Illinois law. Plaintiff certainly does not point to any principle of Illinois law that compels Defendants to look behind the outcomes of zoning classifications adopted pursuant to the petition procedures set out in Section 9-9, and in fact the language and structure of that statute indicate that a petition filed by the Clerk remains in effect

8

unless and until the state circuit court "finds that the petition is invalid." Thus, if Defendants had ignored the 1984 decision of the City Clerk, and denied the license application as urged by Plaintiff, Defendants likely would be facing a different lawsuit brought by the disappointed applicant.

Defendants' consideration of a liquor license application affects numerous persons—the applicant, the property owner, and the people, like Plaintiff, who live and work in the neighborhood. In his response brief, Plaintiff suggests that his allegations that "Defendant Steadman refused to meet with Plaintiff or that they had a heated telephone conversation" are enough to establish "totally illegitimate animus." Pl.'s Resp. at 12. Neither *McDonald* nor *LaBella Winnetka, Inc*. reach this second element, but a municipal employee's "heated" disagreement with a citizen during a phone call and failure to arrange a hearing requested by that citizen likely is not "animus" sufficient to warrant federal constitutional litigation. See also *Del Marcelle*, 680 F.3d at 898 (lead opinion of Judge Posner) (citizen who complained repeatedly to a county sheriff about harassment by a motorcycle gang brought equal protection claim that the sheriff provided him with less legal protection than other residents of the county; four judges of the Seventh Circuit concluded that ignoring complaints of a citizen because government officials "thought him a nutcase * * * is not a judgment that the federal courts should second guess in the name of equal protection").

In sum, accepting the allegations in the complaint as true, Plaintiff made numerous inquiries and complaints to the Defendants about applicable liquor regulations and a liquor license application. Plaintiff's equal protection claim is that Defendants largely ignored his complaints, his research, and his interpretation of the law. The complaint does not suggest that Defendants think Plaintiff is a "nutcase," but it does make clear that Defendants disagree with Plaintiff's position. Plaintiff does not identify or allege the existence of any other member of the

9

public whose unsolicited research and legal opinion had been accepted as a basis to ignore a 30-year-old decision of the City Clerk (or other official designated by state law with decision making authority) or otherwise deviate from longstanding practice in determining if an area is eligible for liquor licenses. Thus, while a disagreement exists, an equal protection claim does not. Defendants had a rational basis for relying on the 1984 decision of the City Clerk, and Plaintiff's complaint fails to state a claim for a class-of-one equal protection violation.

B.  **State Law Claims**

In addition to his § 1983 claims, Plaintiff also sued Defendants for a petition for writ of mandamus pursuant to 735 ILCS 5/14-101 (Count III) and indemnification pursuant to 745 ILCS 10/9-102 (Count IV). Because the Court has dismissed the only claim over which it has original jurisdiction, it must now address whether to retain jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[3] the Court dismisses without prejudice Plaintiff's state law claims.

---

[3] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id*. at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law claims. *Wright*, 29 F.3d at 1251. Finally, this is not a circumstance in which "it is absolutely clear how the pendent claims can be decided." *Id*.

**IV.     Conclusion**

For the reasons set forth above, the Court grants Defendants' motion to dismiss [14] with respect to Plaintiff's equal protection and due process claims and dismisses Plaintiff's state law claims without prejudice to being refiled in state court if Plaintiff so desires.  The dismissal of the due process claim is with prejudice; the dismissal of the equal protection claim is without prejudice and with leave to replead within 21 days if Plaintiff believes that he can cure the deficiencies identified above consistent with Federal Rule of Civil Procedure 11.  If no amended complaint is filed within that time period, the Court will dismiss all of the federal claims with prejudice and enter a judgment order consistent with Federal Rule of Civil Procedure 58.

Dated:  May 19, 2014                                    _____
                                                        Robert M. Dow, Jr.
                                                        United States District Judge